■ In the Matter of DANIEL GREENE, Respondent, v. MARY A. HANNON, Appellant. In the Matter of MARY A. HANNON, on Behalf of ERIKA A. GREENE, Appellant, v. DANIEL GREENE, Respondent.— Order, Family Court of the State of New York, New York County, entered on March 22, 1971, which on reargument adhered to a prior decision, reducing weekly support payments for one female child age six years to $60 per week and denying counsel fees, modified, on the facts and law and in the exercise of discretion, the petitioner-respondent directed to pay $96.16 weekly for the support of the infant daughter of the parties, which sum is to include private schooling, transportation and day camps, and $300 counsel fees for services rendered in behalf of the infant daughter, to be paid within 20 days of the date of this decision; and as so modified, the order is affirmed, without costs and without disbursements. The cause is remanded as hereafter provided. The appeal from the order of said court entered on February 17, 1971, is dismissed as academic, without costs and without disbursements. Said order was superseded by the order

granting reargument and adhering to the original decision. By petition dated November 9, 1970, the appellant mother charged the respondent with failure to comply with the support provisions of a foreign divorce decree dated December 30, 1969. The respondent father, by petition dated January 26, 1971, applied for a downward modification of the provisions of the decree on the ground of changed circumstances. The separation agreement dated January 17, 1969 provides for $96.16 weekly for the support of the petitioner-respondent, Mary Ann Hannon, $96.16 weekly for the support of the child, and, in addition, private school and camp expenses, as well as all extraordinary medical and dental expenses. Mary Ann remarried in April, 1970 thereby relieving the petitioner-respondent, Daniel Greene, of the obligation to pay her weekly support of $96.16. Following the remarriage of Mary Ann, Daniel suspended all payments required by the agreement for three weeks, after which he resumed payments for the support of the child, other than school and camp expenses. The burden is on Daniel, seeking the reduction, to establish the economic basis therefor. Daniel testified his "adjusted gross" in 1968 was $23,400. The parties separated during August, 1968. Prior and since, Daniel's occupation was and is that of portrait painter, which he pursues at his place of residence consisting of a seven-room studio of three bedrooms, kitchen, studio, storeroom and dining room. He also has a teaching position which pays him $3,000 a year for 10 months work. Daniel continued to maintain this establishment after the separation in August, 1968. In addition, he arranged for a lease of an apartment for Mary Ann and their child which he signed, the rent to be paid by Mary Ann out of the sums received from Daniel. The separation agreement provides that Daniel is to provide funds to furnish the new apartment. There is no evidence of the business deductions from gross income for 1968 resulting in the adjusted gross of $23,400. The absence of evidence of the business deductions makes impossible the determination of how much was deducted by Daniel for maintenance and expense of the residence-studio occupied by the family in and prior to 1968, and since by Daniel alone. Items of business deductions such as entertainment, travel and maintenance serve to distort the real income when there is no disclosure of the gross income and the premises are occupied for residential and business purposes. The same applies to the year 1969 during which Daniel's adjusted gross income was $36,703. The year 1970 is the only one for which Daniel's gross income is given. He testified his gross income for 1970 was $28,522.34, and his adjusted gross for that year was $10,860, which adjusted gross is erroneously described in the order herein as gross income. Presumably the difference of about $18,000 between the gross and adjusted gross represents business deductions about which the record does not inform. Daniel also testified that his expenses for "personal necessities" are $1,953 monthly. The personal expenses include $300 for rent, presumably maintenance of the co-operative now owned by Daniel, and occupied for business purposes; and $161 for private school, busing and camp for the child. Daniel alleges he also pays $620 monthly on account of bank loans made to enable him to purchase for the sum of $35,000 the apartment occupied by him for residential and business purposes. This purchase occurred in late 1969 or early 1970. The principal reason assigned by Daniel for the alleged decrease in his annual income for 1970 is that in 1968 and until 1970 his income reflected the sale of paintings over the course of 10 years to one collector. The separation agreement, made in January 1969, presumably reflects the anticipation of sales of a similar nature of paintings made by Daniel since 1968. The fact that he has not made a similar transaction since 1968

is not determinative and it does not appear that he has not been building up a portfolio of paintings or that he has not been able to dispose of those he has accumulated after 1968. The remaining circumstance adverted to by Daniel is the purchase of the apartment formerly occupied by him and his family and used in his business. The bank loans therefore represent in large measure an equity which will redound to his financial benefit. To that extent he cannot base a claim for diminution of support of his child any more than if he had deposited the proceeds of the loans in his bank account. In the light of these circumstances, we hold the reduction of the support for the child is not substantiated by the record. However, the $96.16 payment for support of the child is to cover expenses of private schooling, transportation and day camp. Counsel fees for services rendered in behalf of the infant daughter should be allowed in the sum of $300. The cause is remanded to the Family Court to take proof of the amount of arrears from the time of the filing of the petition on November 9, 1970 and to provide for the payment thereof. Concur — Markewich, Kupferman and McNally, JJ.; Stevens, P. J., and McGivern, J., dissent in the following memorandum by McGivern, J.: I disagree to the extent that I would affirm the Trial Judge in his reduction of weekly support for the six-year-old daughter, now living with her remarried mother, to the sum of $60 a week, on the conclusion of the court that, for the present, that sum is all the artist-father can pay. And I further think this tribunal should be hesitant to disturb the conclusion of the Family Court Judge, there concededly being no legal error involved in his fixation of the sum of $60 a week, and there being no misconception of any of the facts, requiring appellate revision. It was the Family Court Judge who heard the husband and wife, on a brief record, she for 7 pages, and he for 18, and having seen and heard, I have no reason to believe the Trial Judge is less percipient than we, who did not have such an advantage. It is too axiomatic for citation, that the determination of a Trial Judge, on issues of credibility, is not lightly disturbed. And by my reading of the brief record, the artist comes through as a painter, not without renown, but down on his luck, his greatest asset being his ability to produce unsalable masterpieces. For when times are hard, it is a truism that heading the list of expendable items is a portrait by an artist. And his testimony is consonant with this conclusion. By my assessment of his finances, he is sinking fast in a sea of debt. His first nemesis is the tax collector, owing, as he does, $11,749, for the years 1968 and 1969. Then he owes his landlord about $3,630; he is overdrawn at his bank to the tune of $7,000; he is in debt to the National Arts Club for business expenses and for artists' materials; he is not current with his Master Charge at the National City Bank, and the American Express; he has a car, for which he pays $50 a month garage rent, but he cannot use it because he cannot pay the car insurance; yet he hesitates to dispose of it because it is collateral for a bank loan. As for his $1,953 monthly expenses, adverted to by the majority, $1,375 are unavoidably incurred, aside from the $578 previously required for the support of the child; and not to be overlooked is the sum of $620, required to be paid to the banks every month, as against loans. Nor is there the slightest scintilla in the record to support any conclusion he is slyly hoarding his masterpieces, or that his plight is the result of some profligacy. Indeed, none of his testimony was successfully challenged. Nor is there any evidence of a positive nature contrary to his story. Coming to his apartment, where he both lives and works, it went co-op on the current New York principle of " Buy-or-Else ". And there is no evidence to impair his explanation that he had little

choice. He had been there eight years. As a studio, it had northern light and a large window. It was accessible to his patrons. And he masterminded the purchase by borrowing $15,000 from a bank, by borrowing another $9,000 from a relative, by refinancing his car, and wiping out his bank balance. Oscar Wilde could have done no better. But the question before us is his present ability to pay. I do not appreciate the majority's analogy of borrowed funds (which must be repaid) with bank deposits. Thus, in differing from the majority, I see no point in adding to this father's financial woes, out of what seems to me, to be misguided solicitude for the infant daughter, now safe with her remarried mater, and seemingly, lacking no necessary. And I still think, as an appellate court, we would do a far, far better thing if we affirmed the learned Family Court Judge, with due obeisance to his conceded expertise in these matters, and, in the futuro, if the fortunes of the artist turn upwards, and, becoming another Gainsborough, he is liberated from his present burdens, a new sum for the child may then be fixed, more commensurate with his funds then available. (*Winkler* v. *Winkler*, 13 A D 2d 924, affd. 11 N Y 2d 693.)